# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LEE TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:11-cv-02042-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

### I.   INTRODUCTION

Plaintiff Anthony Lee Taylor ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income payments based on disability pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record and based upon proper legal standards. Accordingly, the Court affirms the Commissioner's determination.

## II. BACKGROUND

### A. Overview of Administrative Proceedings

On October 21, 2008, Plaintiff applied for Supplemental Security Income payments based on disability pursuant to Title XVI of the Social Security Act. AR 154-56.[1] Plaintiff's application alleged he became unable to work because of high blood pressure, gout, heart problems and obesity. AR 216. Plaintiff's application was denied initially and on reconsideration. AR 74, 83. Subsequently, Plaintiff requested a hearing before an ALJ. In a decision dated March 4, 2011, the ALJ found that Plaintiff was not disabled as defined by the Act because he could perform jobs that existed in significant numbers. AR 28-39. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR 2-4. Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g), 1383(c)(3)

### B. Plaintiff's Background and Testimony

A hearing was held on January 6, 2011. AR 45. Plaintiff was represented by Steven Whitfield. A vocational expert, Kenneth Ferra (the "VE"), also provided testimony.

Plaintiff was born on August 17, 1962. AR 52. Plaintiff is approximately six feet tall and weighs 257 pounds. AR 52. Plaintiff has completed an eleventh grade education, is single and lives in a house with his mother. AR 53. Plaintiff has a driver's license; however, generally is driven by his mother. AR 53. Plaintiff's prior work experience was as a "Well Puller," which entailed moving and fixing equipment at an oil rig. AR 55-56.

Plaintiff testified he cannot attend to his own personal needs and receives assistance from his mother to get through the day. AR 54. For example, Plaintiff testified he does not shave himself or do any household chores. AR 54. Plaintiff cannot make his own bed, wash dishes, engage in rudimentary food preparation or go shopping. AR 54. Plaintiff testified he does not engage in any social activity or have any hobbies. AR 55. Plaintiff testified his typical day is spent sleeping. AR 54. Plaintiff testified his inability to attend to his personal needs is attributable to his gout. Plaintiff

---

[1] References to the Administrative Record cite to "AR," followed by the corresponding page number to the Administrative Record.

2

testified the gout affects his right hand, "fifth finger," right big toe, ankle and right wrist. AR 59. Plaintiff testified the pain caused by gout flare-ups "is so severe [he] can't do anything." AR 59. Plaintiff experiences gout problems once every one-to-two weeks. AR 59-60. The swelling from Plaintiff's gout episodes last three-to-six days. *Id.*

Plaintiff also testified he suffers from high blood pressure. AR 57. Plaintiff was once hospitalized for 7-10 days to treat symptoms related to his high blood pressure. AR 58. Plaintiff takes medication for his gout and high blood pressure, however, neither medication controls his symptoms and his high blood pressure medication causes vomiting and dizziness. AR 60. Plaintiff also testified he can't see out of his right eye as a result of an unspecified trauma. AR 60-61.

Plaintiff testified that he can lift 20-25 pounds, however, when his gout breaks out, he cannot lift any weight with his right hand. AR 61-62. Plaintiff also testified that when his gout breaks out, he cannot sit or stand at all. AR 62-63. During a gout break-out, Plaintiff testified he cannot put any pressure on his right leg, and hops on his left leg to ambulate. AR 63.

A vocational expert testified at the hearing. Plaintiff's representative stipulated to his qualifications. AR 67. The ALJ asked the vocational expert to assume a hypothetical individual who could lift and carry up to twenty pounds occasionally and up to ten pounds frequently; sit for up to six hours, and stand or walk for up to six hours, in an eight-hour day; and perform occasional heavy grasping with his right hand. *Id.* The vocational expert said such an individual could not perform Plaintiff's past relevant work but could work as a cashier, cleaner and packing line worker. AR 68. The ALJ asked the VE to assume the hypothetical individual needed an option to sit or stand at will; the VE said that this would yield a 90% reduction of cashier jobs, leaving 11,300 in California, as well as 1,200 assembler jobs and 2,700 order clerk jobs in the state. AR 68. The VE testified that ten times as many of these jobs existed nationwide. AR 68. The expert stated that if the ALJ credited Plaintiff's hearing testimony, there would be no jobs that he could perform. AR 71.

**C.   Medical Record**

The entire medical record was reviewed by the Court. The Court will reference the medical evidence to the extent it is necessary to the Court's decision.

**D.   The ALJ's Decision**

On May 4, 2011, the ALJ issued a decision finding that Plaintiff had not met his burden to show he was disabled within the meaning of the Act.  Specifically, the ALJ made the following relevant findings:

1. Plaintiff has not engaged in substantial gainful activity since October 21, 2008, the application date;

2. Plaintiff has the following severe impairments: gouty arthritis, status post I&D surgery of the right fifth finger and excision removal of calcific deposit with residuals; obesity; hypertensive heart disease; and hypertension;

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.926);

4. Plaintiff has the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and walk about six hours in an eight hour workday. Plaintiff requires an option to sit or stand at will and can occasionally forcefully grip or grasp with his right hand;

5. Plaintiff is unable to perform any past relevant work;

6. Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 416.969 and 416.969(a));

7. Plaintiff has not been under a disability, as defined in the Act, from October 21, 2008 through the date of the ALJ's decision (20 CFR 416.920(g)).

### III.   DISCUSSION

Plaintiff argues the ALJ committed three errors in reaching her decision: (1) the ALJ improperly rejected Plaintiff's subjective symptom testimony; (2) the ALJ failed to incorporate the side effects of Plaintiff's medication in hypotheticals to the VE; and (3) the VE's testimony indicates there are not a significant number of jobs available in the national economy.

**A.     Standard of Review**

To be disabled, a claimant must have a severe medical impairment capable of lasting at least twelve months, such that in light of his medical and vocational limitations he cannot engage in either his past work or in any work existing in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3). The claimant will be found disabled if he either satisfies all the elements of this definition or has a medical condition which is defined as disabling under the Commissioner's "listings." *See* 20 C.F.R. 404.1520. The Commissioner prescribes the order in which the ALJ considers these factors, and instructs the ALJ to end his inquiry as soon as he reaches a dispositive finding, either in that the claimant fails to satisfy an element of disability or in that he satisfies a listing. This sequential process is intended to help ensure that determinations are uniform, administratively efficient, neutral, and carefully documented. 20 C.F.R. 404.1594(b)(5); *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999) (sequential process embodies "presumptions about disabilities, job availability, and their interrelation" which "grow out of the need to administer a large benefits system efficiently").

Congress has provided a limited scope of judicial review of the Commissioner's finding that a claimant is not disabled. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.*, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

**B.     The ALJ's Credibility Findings**

A two-step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281–1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter,* 161 F.Supp.2d 1078, 1086 (N.D.Cal.2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96–7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Social. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen,* 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).

The ALJ provided clear and convincing reasons to discredit Plaintiff's subjective symptom testimony.  First, the ALJ noted that Plaintiff had a poor work history.  AR 37.  Evidence that a claimant has rarely or inconsistently worked during his lifetime can call into question a claimant's allegations that his current unemployment is because of a medical condition. *See Thomas,* 278 F.3d

6

at 959 (noting that the claimant "had an extremely poor work history and has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work"). Plaintiff was born in 1962 and left school in 1980. The record indicates that Plaintiff did not work at all from 1985 through 2004, a twenty-year period. AR 160, 161. Plaintiff's twenty year gap in employment undermined his allegations that he was currently out of work because of medical conditions.

Second, the ALJ noted that Plaintiff's treatment for his allegedly disabling conditions was limited. AR 36. An ALJ considers the nature and effectiveness of treatment that a claimant receives for allegedly disabling conditions. See 20 C.F.R. §§ 416.929(c)(3)(iv), (v). At the administrative hearing, Plaintiff primarily attributed his inability to work to his gout condition. However, as the ALJ noted, Plaintiff received limited treatment for his gout condition. AR 36. Indeed, while Plaintiff mentioned gout on a couple occasions, his treatment records show little or no indication of specific treatment for this condition. Plaintiff's overall limited and conservative treatment conflicts with his allegations of disabling symptoms. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (prescription of conservative treatment "suggest[ed] a lower level of both pain and functional limitation" than the claimant alleged).

Third, the ALJ noted that Plaintiff was noncompliant with medications. AR 33, 36-37. A claimant's failure to follow prescribed treatment can undermine his allegations of disability. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("[a]nother form of such evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"). Here, the ALJ noted that Plaintiff was noncompliant with his hypertension medication (AR 33, 36, 530 ("not taking all meds"), 536 ("not taking meds"), 911 (hypertension uncontrolled due to noncompliance with medications), 947 (hospitalized for chest pain because he was not taking medications)). In this case, Plaintiff testified that his hypertension was uncontrolled despite medication. AR 57. However, the evidence showed Plaintiff's hypertension was poorly controlled because he did not take his medication. Plaintiff's failure to take his medication strongly undermines his testimony.

The ALJ reasonably relied on this evidence to find Plaintiff's testimony less than fully credible. Accordingly, the ALJ set forth clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's credibility.

### C. The ALJ Included All of Plaintiff's Limitations In Her Hypotheticals to the Vocational Expert

Plaintiff argues his subjective complaints regarding the side effects of his medication should have been included in his RFC as well as the ALJ's hypotheticals to the VE. Plaintiff does not otherwise challenge the ALJ's RFC finding.

The ALJ properly discounted Plaintiff's subjective symptom testimony. This decision applies equally to Plaintiff's testimony concerning the effects of his medication. Indeed, the record does not show any evidence of side effects beyond Plaintiff's subjective statements to that effect. AR 60, 65, 220. *See Thomas,* 278 F.3d at 960 (noting that the claimant "offers no objective evidence that her medications affected her concentration or caused dizziness. The only evidence regarding these symptoms is [the claimant's] own statements to her doctor and her testimony at the hearing," which the ALJ properly rejected). Here, since the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, the ALJ's rejection of Plaintiff's subjective reports of side effects was proper.

### D. The ALJ Properly Concluded A Significant Number of Jobs Exist that Plaintiff Can Perform

At step five of the sequential evaluation process, the ALJ found that Plaintiff was not disabled because he could perform jobs that existed in significant numbers in the national economy. AR 38-39. In so finding, the ALJ relied on vocational expert testimony. AR 38-39; 67-71. An ALJ can rely on a vocational expert's testimony so long as the ALJ presents a hypothetical question to the vocational expert identifying all the limitations that the claimant has. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

The ALJ asked the vocational expert a hypothetical question that included all the limitations that she found Plaintiff to have. AR 68. In response, the VE testified that such an individual could work as an assembler, order clerk or a cashier. After applying a 90% reduction of these jobs to afford Plaintiff a stand-sit option, the VE's testimony indicated the availability of 15,200 in

California and 152,000 in the national economy.  AR 68.  Ninth Circuit authority finds that 152,000 jobs nationally constitutes a significant number. *See Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995) (64,000 jobs nationwide represented a significant number of jobs).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Anthony Lee Taylor.

IT IS SO ORDERED.

Dated:  **September 18, 2013**          /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE